IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02063-CMA-KLM

TAE HYUNG LIM,

    Plaintiff,

v.

AMERICAN ECONOMY INSURANCE COMPANY,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion for Protective Order Regarding Appraiser and Umpire Discovery and Testimony and *in Limine* to Preclude Admission of Any Materials Created After Appraisal was Demanded at Trial** [#26][1] (the "Motion"). On January 31, 2014, Plaintiff filed a Response [#28]. On February 18, 2014, Defendant filed a Reply [#29]. Pursuant to 28 U.S.C. § 636 (b)(1) and D.C.COLO.LCivR 72.1(c), the Motion has been referred to this Court for disposition [#27]. The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#26] in **GRANTED in part** and **DENIED in part**.

---

[1] "[#26]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). The Court uses this convention throughout this Order.

# I. Background

## A. Procedural Background

In this case, Plaintiff brings claims against an insurer relating to damages to a commercial property. *Compl.* [#4] at ¶¶ 6-9. Specifically, Plaintiff brings three claims against Defendant: (1) improper denial of an insurance claim pursuant to Colo. Rev. Stat. § 10-3-1115, (2) breach of contract, and (3) improper denial of an insurance claim pursuant to Colo. Rev. Stat. § 10-3-1113. Plaintiff initially filed suit in state court on June 24, 2013. *Id.* at 1; *Notice of Removal* [#1] at 1. Defendant removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## B. The Appraisal

Certain background information is crucial to understanding the arguments made by the parties regarding the instant Motion. The insurance policy invoked by Plaintiff when seeking coverage for damage to the property includes a clause that allows either the insured or the insurer to "make a written demand for an appraisal of the loss." *Motion, Ex. I* [#26-9] at § E(2). Specifically, the clause states:

> 2. Appraisal
>
> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will
>
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

*Id.* While the full policy was not provided to the Court, the parties seem to agree that "we" in this clause refers to the insurer, Defendant, and "you" refers to the insured, Plaintiff. *See Response* [#28] at 3 (defining "we" to mean Defendant and "you" to mean Plaintiff); *Reply* [#29] at 5 (noting that the "we" in the last sentence of the clause refers to Defendant). Plaintiff invoked this clause. *Motion, Ex. G* [#26-7] at 1; *see also Motion* [#26] at 2. Accordingly, "each party selected an appraiser and the appraisers agreed on an umpire." *Sched. Order* [#18] at § 4(9). The umpire and Plaintiff's appointed appraiser signed an appraisal award in the amount of $260,567.16 on December 21, 2012. *Id.*; *Motion, Ex. L* [#26-12] at 1 (a total award of $219,909.95 after subtracting depreciation). Defendant admits that the appraisal award was binding on the parties. *Motion* [#26] at 2. As a result, Defendant paid Plaintiff "the difference between the payment made in connection with its original estimate and revised estimate pursuant to the reinspection and the appraisal award." *Id.* Defendant alleges and Plaintiff does not dispute that Defendant has paid Plaintiff the full appraisal amount of $260,567.16. *Id.*; *see generally Response* [#28].

**C.    The Motion**

In the Motion, Defendant asks the Court to: (1) enter a protective order pursuant to Fed. R. Civ. P. 26(c)(1)(A) and (D) holding that the appraisers and umpire are "arbitrators" pursuant to the Colorado Uniform Arbitration Act (the "CUAA") and, therefore, cannot be deposed or otherwise subjected to discovery in this case, *Motion* [#26] at 7-12; (2) enter an order excluding the appraisal award from admission into evidence pursuant to Fed. R. Evid. 401, 402, and 403, *id.* at 12-13; and (3) enter an order precluding discovery of any information and materials after the date the appraisal was demanded, *id.* at 13-14. The

Court addresses each request for relief in turn.

## II.  Analysis

**A.     Status of Appraisers**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  Pursuant to Fed. R. Civ. P. 26(c), a party "may move for a protective order in the court where the action is pending." The court may issue an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery in certain matters." Fed. R. Civ. P. 26(b)(1)(D).

Defendant seeks a protective order precluding the appraisers and umpire from being subject to discovery.  Defendant argues that the appraisers and the umpire are "arbitrators" under the CUAA and, therefore, they are "precluded from discovery and testifying at trial pursuant to [Colo. Rev. Stat.] § 13-22-214(4)(a)." *Motion* [#26] at 3.   Plaintiff argues that the "appraisal process is nowhere close to an 'arbitration'" and maintains that the request should be denied.  *Response* [#28] at 5.

Pursuant to Colo. Rev. Stat. § 13-22-201(2), an "arbitrator" is "an individual appointed to render an award, alone or with others, in a controversy that is subject to an agreement to arbitrate."  Such an individual "shall not be competent to testify and may not be required to produce records as to any statement, conduct, decision, or ruling that occurred during the arbitration proceeding, to the same extent as a judge of a court of this state acting in a judicial capacity." Colo. Rev. Stat. § 13-22-214(4)(a). Defendant provided two Colorado state trial court decisions supporting Defendant's argument that the appraisers and umpire are arbitrators under the CUAA.  In *Schneiderman v. Liberty Insurance Corporation*, Judge McNulty held:

> The insurance contract contains a binding process, involving appraisers and an umpire, that is utilized when the amount of loss is in dispute. The parties used that process here to reach a binding determination regarding amount of loss. Terry Biggs was the umpire used by the parties.
>
> The court find that Mr. Biggs, as an umpire in this matter, meets the definition of an arbitrator under the Uniform Arbitration Act. As such his deposition is precluded by [Colo. Rev. Stat. §] 13-22-214(4).

*Motion, Ex. O* [#26-15] at 2. While the full factual background of the case is not provided with the court's decision, it is clear that the state court judge in *Schneiderman* held that an umpire in an insurance loss appraisal process similar to that used by the parties is an arbitrator under Colo. Rev. Stat. § 13-22-201(2).

The second case provided by Defendant is even more persuasive. In *Brookfield Townhome Association v. Peerless Indemnity Insurance Company*, Judge Zenisek quashed subpoenas directed to individuals and entities involved in an appraisal process similar to the process at issue here. *Motion, Ex. P* [#26-16] at 1. Judge Zenisek wrote:

> In looking at the motion, the court must evaluate whether the appraisal process contemplated in the parties' contract is an "arbitration," and thus the individuals and entities involved are "arbitrators" as defined by [Colo. Rev. Stat. §] 13-22-201.
>
> The process at issue here involves two parties, each of whom will "select a competent and impartial appraiser. . . . The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding."
>
> . . .
>
> Here, the process contemplated is a binding process that fits squarely within the description of [Colo. Rev. Stat. §] 13-2-201.

*Id.*

The key question in each of these cases was whether the appraisal process was

5

binding on the parties. This is also a key question faced by courts deciding whether a particular dispute resolution process is properly classified as an arbitration under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 *et seq*. In *Liberty Mutual Group, Inc. v. Wright*, 2012 WL 718857, at 6 (D. Md. March 5, 2012), the court determined that a process seemingly identical to the appraisal process used here constituted arbitration. *Id.* That court concluded that an appraisal process, like the one at issue here, was properly classified as an arbitration under the FAA. *Id.* ("When viewed on the whole, however, the entire appraisal process does constitute 'arbitration.'").

Many courts considering this question under the FAA have determined that a process that binds the parties regarding the particular dispute at issue is properly called arbitration. *See, e.g., Salt Lake Pub. Co., LLC v. Mgmt Planning, Inc.*, 390 F.3d 684, 689 (10th Cir. 2004) ("Central to any conception of classical arbitration is that the disputants empowered a third party to render a decision settling their dispute.") (citation omitted); *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988) (finding clause constituted enforceable arbitration clause because "the language clearly manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution."); *Wilbert, Inc. v. Homan*, 2013 WL 6238286, at *3 (W.D.N.C. Dec. 3, 2013) ("Although courts have offered differing formulations for what constitutes arbitration, the focus of the inquiry is on the resemblance between the means of dispute resolution chosen and 'classic arbitration' in which the parties have agreed to be bound by the decision of a third party.") (citing *Fit. Tech. Inc. v. Bally Total Fitness Holding Corp.* 374 F.3d 1, 7 (1st Cir. 2004)).

Here, the policy states: "A decision agreed to by any two [of the two appraisers and

one umpire selected] will be binding." *Motion, Ex.* I [#26-9] at § E(2). Plaintiff takes the position that the last sentence of the appraisal clause renders the appraisal process non-binding. *Response* [#28] at 4. That sentences states: "If there is an appraisal, we [Defendant] will still retain our right to deny the claim." *Motion, Ex.* I [#26-9] at § E(2). Plaintiff's interpretation of this clause as allowing Defendant to ignore the result of the appraisal is misplaced and, if accepted, would render the earlier sentence in the clause meaningless. On its face, the clause binds the parties to the appraisal of the amount of loss. Neither party is permitted to dispute the amount of loss once it has been determined. However, Defendant still retains its "right to deny the claim." *Id.* The Court interprets this clause to allow Defendant to deny the claim for reasons not related to the amount of the appraisal (e.g., because the premium had not been paid or because the policy had expired). It does not allow Defendant to ignore the loss calculation reached through the appraisal process. Therefore, the appraisal itself–which is limited to determining the amount of loss–is binding on both parties. This process fits many courts' definitions of arbitration, including the Tenth Circuit's definition in *Salt Lake Publishing Co.*, because "the disputants empowered a third party to render a decision settling their dispute." *See Salt Lake Pub. Co.*, 390 F.3d at 689. Such a definition does not require that the parties empower that third party to decide every dispute between them. It is enough here that the appraisal process bound the parties as to the amount of the loss. That appraisal process, therefore, is properly classified as an arbitration pursuant to the CUAA.

As stated above, Colo. Rev. Stat. § 13-22-201(2) defines an "arbitrator" as "an individual appointed to render an award, alone or with others, in a controversy that is subject to an agreement to arbitrate." Because the Court finds that the appraisal is properly

classified as an arbitration under the CUAA, the appraisers and umpire are "arbitrators" under the CUAA.

Colo. Rev. Stat. § 13-22-214(4)(a) states that arbitrators "shall not be competent to testify and may not be required to produce records as to any statement, conduct, decision, or ruling that occurred *during the arbitration proceeding*, to the same extent as a judge of a court of this state acting in a judicial capacity." (emphasis added). Therefore, the appraisers and umpire may not testify concerning the appraisal nor may they be compelled to disclose documents relating to the appraisal. Accordingly, to the extent the Motion [#26] seeks entry of an order pursuant to Fed. R. Civ. P. 26(c)(1) "precluding [the appraisers and umpire], and their employers, from testifying or being subjected to discovery in this matter, . . .," *Motion* [#26] at 15, it is **GRANTED in part** and **DENIED in part**. The CUAA only limits testimony and discovery of information occurring during the appraisal. To the extent the appraisers or umpire have relevant information that dates prior to Plaintiff's demand for appraisal or after the appraisal concluded and does not relate to what occurred during the appraisal, the Motion is **DENIED**. *See Response* [#28] at 5 (discussing Ms. Drinnan's role as an expert "a full year before she was appointed as [Defendant's] appraiser."). To the extent the appraisers or umpire have relevant information regarding events that occurred during the appraisal, such information is not subject to discovery, and the Motion is, therefore, **GRANTED**.

**B.      Discovery of Information and Materials After the Appraisal was Demanded**

Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Evid.

401 defines relevance as having a "tendency to make a fact more or less probable than it would be without the evidence" and as information that "is of consequence in determining the action." Plaintiff brings her first claim under Colo. Rev. Stat. § 10-3-1115, which states that an insurer "shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). The statute states that "an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis . . . ." Colo. Rev. Stat. § 10-3-1115(2). "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012).; *see also Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F.Supp.2d 1091, 1108 (D. Colo. 2013).

Defendant argues that "materials related to the timeframe [sic] after arbitration is demanded are irrelevant and not discoverable." *Motion* [#26] at 13. Defendant further argues that "the Federal Rules of Evidence and [case law] bar the amount of the appraisal award and any evidence after the date appraisal was demanded." *Reply* [#29] at 7.

In *Bucholtz v. Safeco Insurance Company of America*, 773 P.2d 590, 593 (Colo. App. 1988), the Colorado Court of Appeals held that summary judgment was properly granted on plaintiff's claims for bad faith breach of an insurance contact because the plaintiff demanded arbitration, thereby suspending the insurance company's duty to negotiate settlement. The court stated: "[A]lthough the insurer's duty of good faith and fair dealing continues unabated during the life of the insurer-insured relationship, any obligation to negotiate as a reflection of good faith may be suspended temporarily by collateral

9

circumstances." *Id.* at 592. The court found that "[o]ne such circumstance is a request for arbitration by either of the parties pursuant to a valid arbitration provision in the contract of insurance." *Id.* at 593. "The court also found that there must be a 'genuine disagreement' as to the amount of compensable damages payable for there to be an effective suspension of the insurer's duty." *Toy v. Am. Family Mut. Ins. Co.*, 12-cv-01683-PAB-MJW, 2012 WL 5290266, at *1 (D. Colo. Oct. 26, 2012) ("*Toy I*") (citing *Bucholtz*, 773 P.2d at 593 and *Vaccaro*, 275 P.3d at 759). In *Toy I*, this Court held that because "defendant's good faith duty to negotiate, pay, or settle plaintiff's claims was suspended by plaintiff's arbitration demand. . . . defendant's records created after plaintiff's demand for arbitration are irrelevant." *Id.* at 2. The decision in *Toy I* was based on the suspension of the insurer's duty to negotiate. Accordingly, the Court must consider whether the *Bucholtz* court's analysis regarding the suspension of an insurer's duty to negotiate applies here.

Both a genuine disagreement as to the amount of damages and an adversarial proceeding must exist for the Court to conclude that an insurer's duty to negotiate was suspended. *See Baker*, 939 F.Supp.2d at 1109; *Rabin v. Fidelity Nat. Prop. & Cas. Ins. Co.*, 863 F.Supp.2d 1107, 1113 (D. Colo. 2012). Here, an "adversarial proceeding" was initiated when Plaintiff demanded appraisal. *See Toy v. Am. Family Mut. Ins. Co*, No. 12-cv-01683-PAB-MJW, 2014 WL 485922, at *2 ("*Toy II*") (noting that the duty to negotiate may be suspended when arbitration is initiated). Further, Plaintiff's demand for appraisal makes clear that there was a genuine disagreement as to the amount of compensable damages at that time; indeed, determining the amount of damages was the purpose of the appraisal. While Plaintiff argues that "there was no 'genuine dispute' between [ ] Plaintiff and Defendant on the claim of loss ($1,390 vs. $260,567.16)," *Response* [#28] at 6, such

10

argument is misplaced. As noted by the parties in the Scheduling Order, "the appraisal process was invoked *to resolve the dispute* as to the nature and scope of damages to the property at issue." *Sched. Order* [#18] at § 4(9) (emphasis added). Further, the fact that the parties' estimates of damages prior to the appraisal were $1,390 (Defendant) and $144,746.86 (Plaintiff)[2], *Sched. Order* [#28] at 6, shows that there was a dispute as to the amount of damages. Accordingly, the Court finds that Defendant's duty to negotiate was suspended when Plaintiff demanded appraisal. "As such, [D]efendant's records created after [P]laintiff's demand for [appraisal] are irrelevant." *Toy I*, 2012 WL 5290266, at *2 (denying motion to compel discovery of "material related to the time frame after arbitration was demanded").

As noted in *Toy II*, "[a]n insurer's conduct after the commencement of adversarial proceedings can be admissible and relevant to an insurer's duty of good faith, provided the proponent of such evidence makes a sufficient showing of relevance." *Toy II*, 2014 WL 485922, at *2 (citing *Rabin*, 863 F.Supp.2d at 1116). As the Court explained:

> Conduct after the filing of a complaint can be admissible if it is "'a continuation of the same difficulties that preceded the filing of the complaint' and [is] relevant as evidence of a pattern of defendant's bad faith dealings with the plaintiff." *Dale v. Guaranty Nat'l Ins. Co.*, 948 P.2d 545, 552 (Colo. 1997) (quoting *Southerland v. Argonaut Ins. Co.,* 794 P.2d 1102, 1106 (Colo. App. 1990)). For example, evidence that an insurer failed to pay the entire arbitration award may be relevant because such conduct was demonstrative of "a pattern or course of conduct." *Rabin,* 863 F.Supp.2d at 1116; *see also Southerland,* 794 P.2d at 1106 ("continued late payments and ongoing difficulties . . . were merely a continuation of the same difficulties that preceded the filing of the complaint and were relevant as evidence of

---

[2] In his Response, Plaintiff states that the parties' positions were $1,390 (Defendant) and $260,567.16 (Plaintiff). *Response* [#28] at 6. However, this draws a comparison between Defendant's pre-appraisal estimate and Plaintiff's appraisal estimate. Instead, it is more appropriate to compare both parties' pre-appraisal estimates.

11

> defendant's habitual pattern in dealing with plaintiff").
>
> However, where a plaintiff seeks to introduce evidence of specific conduct that is related to and occurred during litigation, plaintiff must make a specific showing of "extraordinary facts." *Parsons v. Allstate Ins. Co.,* 165 P.3d 809, 819 (Colo. App. 2006); *see, e.g., Tait v. Hartford Underwriters Ins. Co.,* 49 P.3d 337, 343 (Colo. App. 2001) (holding that trial court properly considered defendant's litigation tactics when calculating exemplary damages). In order to be admissible, evidence of litigation conduct must pass a Fed. R. Evid. 403 balancing test, with particular scrutiny placed on the proponent's showing of probative value. *See Parsons,* 165 P.3d at 819. In the context of bad faith claims, where the focus is "the insurer's knowledge and belief during the time the claim is being reviewed[,] the relevance of litigation conduct is severely diminished." *Timberlake Constr. Co v. U.S. Fidelity and Guar. Co.,* 71 F.3d 335, 340 (10th Cir. 1995) (internal quotation marks omitted) (applying Oklahoma law and holding that trial court erred in admitting evidence of a post-litigation letter from insurer's counsel to insurer's adjuster, evidence that insurer filed a counterclaim, and evidence that insurer moved to join necessary party). As such, although an insurer's litigation conduct may be admissible in rare instances, "such evidence will generally be inadmissible, as it lacks probative value and carries a high risk of prejudice." *Id.* at 341; *see, e.g., Rabin,* 863 F.Supp.2d at 1117-18 (excluding evidence of an insurer's attempt to assert counterclaims upon a finding that such evidence was "more benign and less probative of bad faith and a section 1116 violation").

*Id.* (modifications in original). Here, Plaintiff offers no argument that Defendant's conduct during the appraisal was a continuation of the alleged bad faith conduct prior to the appraisal or that Defendant failed to pay the appraisal amount in a timely manner. *See generally Response* [#28]. Accordingly, the Court need not consider the heightened standard explained in *Toy II*.

Therefore, to the extent the Motion [#26] seeks entry of an order "precluding discovery of any information and materials after arbitration was demanded in this matter, . . .," *Motion* [#26] at 15, it is **GRANTED**. This finding is limited to discoverability of information under Fed. R. Civ. P. 26 in the circumstances argued by the parties and should not be read as commentary on the admissibility of such information.

**C.     Admissibility of the Appraisal Award**

Defendant argues that "evidence of the appraisal process and the appraisal award itself has no 'tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Motion* [#26] at 13 (purporting to quote Fed. R. Evid. 401, but conflating subsections a and b). Defendant appears to argue in the alternative that "because the appraisers and umpire are precluded from testifying, and they were the only people actually involved in the appraisal process, the probative value, if any, of secondhand evidence of the appraisal process and the award is substantially outweighed by the danger of unfair prejudice and waste of time." *Motion* [#26] at 13. As a result, Defendant argues, "evidence of the appraisal process and the appraisal award should [ ] be excluded pursuant to [Fed. R. Evid. 403]." *Id.* Plaintiff states that it chose not to address this argument because "Defendant does not state any authority to clarify [its] simple recitation of [Fed. R. Evid.] 403, . . . ." *Response* [#28] at 6. In its Reply, Defendant states that it "based its arguments with respect to the relevance and admissibility of the amount of the award on the language of [Fed. R. Evid.] 401, 402, 403 and their relation to Plaintiff's claims." *Reply* [#29] at 8. Defendant further argues that because Plaintiff failed to offer any argument regarding this issue, "the argument should be considered conceded and the evidence excluded at trial." *Id.* at 7.

**1.     Fed. R. Evid. 401**

Fed. R. Evid. 401 defines relevance as having a "tendency to make a fact more or less probable than it would be without the evidence" and as information that "is of consequence in determining the action." Defendant's argument that the facts that the

appraisal occurred and the appraisal award amount are not relevant to Plaintiff's claims and Defendant's defenses is incorrect. Two of Plaintiff's causes of action are based on Defendant's alleged bad faith delay *and denial* of an insurance claim. *Compl.* [#4] at ¶¶ 19-25, 31-35 (e.g., ¶ 23 Defendant "unreasonably delayed and denied payment of a claim"). For example, Plaintiff brings her first claim under Colo. Rev. Stat. § 10-3-1115 which states that an insurer "shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). Clearly, the fact that Defendant paid the appraised loss amount to Plaintiff is relevant to both Plaintiff's claim and Defendant's defenses to that claim. In fact, Defendant could not defend against this claim if it could not provide evidence that it did, in fact, pay Plaintiff some amount. Otherwise, if the finder of fact determined that the policy covered the loss (a fact Defendant seems not to challenge because it admits it paid the full loss amount to Plaintiff), Defendant would have no evidence to support its position that it had already paid for this loss.

### 2. Fed. R. Evid. 403

Fed. R. Evid. 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. However, "[e]xclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1139 (10th Cir. 2006) (quotation omitted). Defendant maintains that the probative value of this evidence "is substantially outweighed by the danger of unfair prejudice and waste of time." *Motion* [#26] at 13. Defendant's conclusory argument fails

to offer any analysis that would allow the Court to determine on what basis Defendant's position rests. *Cf. United States v. Archuleta*, 737 F.3d 1287, 1293 (10th Cir. 2013) ("even where unfair prejudice is found, 'it must substantially outweigh the probative value of the evidence in order to be excluded under Rule 403.'") (quoting *United States v. Irving*, 665 F.3d 1184, 1213-14 (10th Cir. 2011)). Defendant further argues that "[w]ithout any context as to why these individuals awarded what they did, this evidence becomes extremely prejudicial." *Id*. The Tenth Circuit has made clear that

> [e]vidence is not unfairly prejudicial [ ] simply because it is damaging to an opponent's case. To be *unfairly* prejudicial, the evidence must have an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

*Therrien v. Target Corp.*, 617 F.3d 1242, 1256 (10th Cir. 2010) (emphasis in original) (citation and internal quotation marks omitted). Here Defendant's argument is also conclusory and offers no basis on which the Court can conclude that Fed. R. Evid. 403's protections are necessary in this case. *See Therrien*, 617 F.3d at 1256 ("[Defendant] does not explain how it was unfairly prejudiced by admission of past incidents in its store."). In the absence of any substantive argument that the probative value of the evidence is outweighed by unfair prejudice or any of the other bases listed in Rule 403, the Court cannot conclude that relevant evidence should be excluded. Accordingly, to the extent the Motion [#26] seeks entry of an order "precluding the admission of the appraisal award at trial, . . .," *Motion* [#26] at 15, it is **DENIED**.

### III. Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#26] is **GRANTED in part** and **DENIED**

**in part** as follows:

- To the extent the Motion [#26] seeks entry of an order pursuant to Fed. R. Civ. P. 26(c)(1) "precluding [the appraisers and umpire], and their employers, from testifying or being subjected to discovery in this matter, . . .," *Motion* [#26] at 15, it is **GRANTED in part** and **DENIED in part**. The CUAA only limits testimony and discovery of information occurring during the appraisal. To the extent any of the appraisers or umpire have information that dates prior to Plaintiff's demand for appraisal or after the appraisal concluded and does not relate to what occurred during the appraisal, the Motion is **DENIED**. To the extent the appraisers or umpire have information regarding what occurred during the appraisal, such information is not subject to discovery, and the Motion is, therefore, **GRANTED**.

- To the extent the Motion [#26] seeks entry of an order "precluding discovery of any information and materials after arbitration was demanded in this matter, . . .," *Motion* [#26] at 15, it is **GRANTED**.

- To the extent the Motion [#26] seeks entry of an order "precluding the admission of the appraisal award at trial, . . .," *Motion* [#26] at 15, it is **DENIED**.

Dated: April 14, 2014

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge